1
2
3
4
5
6

IN THE UNITED STATES DISTRICT COURT

7
8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
10

RUBEN SIZEMORE,

No. C 13-00169 WHA

11

Plaintiff,

12

v.

**ORDER DENYING PARTIAL
SUMMARY JUDGMENT AND
ALLOWING LIMITED
DISCOVERY**

13

PACIFIC GAS & ELECTRIC
RETIREMENT PLAN and EMPLOYEE
BENEFIT COMMITTEE OF THE
PACIFIC GAS & ELECTRIC
RETIREMENT PLAN,

14
15
16

Defendants.

17

_____/

18

### INTRODUCTION

19

In this ERISA action involving employee benefits under a pension plan, defendants move

20

for partial summary judgment on the standard of review. Plaintiff opposes and requests leave to

21

take limited discovery. For the reasons stated below, defendants' motion for summary judgment

22

is **DENIED**. Plaintiff's request to take limited discovery is **GRANTED**.

23

### STATEMENT

24

The background of this action is detailed in a prior order (Dkt. No. 26). In brief, plaintiff

25

Ruben Sizemore began working in a Pacific Gas & Electric ("PG&E") power plant starting in

26

early January 1983 (Compl. ¶ 8). He initially worked as a contract employee. He was laid off

27

for two short periods in mid-1987 and early 1989 but has been rehired and continues to work

28

there (*ibid.*).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Plaintiff's PG&E pension benefits are governed by an employer-funded pension plan.

2    PG&E's five-member Employee Benefit Committee ("EBC") is the plan administrator.  PG&E's

3    three-member Employee Benefits Appeals Committee ("Appeals Committee") reviews and

4    decides appeals when a claimant is denied benefits by the EBC.  Both committees are composed

5    entirely of high-level PG&E officers (AR 1721–23).  Although there have been a few versions of

6    the plan since 1983, all have granted discretionary authority upon the plan administrator to

7    determine eligibility for benefits under the plan (AR 16, 215, 244, 901–02).

8    In 1993, the Engineers and Scientists of California, MEBA (AFL-CIO) union filed a

9    grievance with PG&E contending that long-term contract workers were actually employees.  The

10   grievance resulted in a letter agreement that reclassified plaintiff as an "employee" as of May 15,

11   1989 (Compl. ¶¶ 9–11).  Plaintiff, believing that he should be credited with pension benefits for

12   the time period between 1983 and 1989 because he was a "common law employee," submitted

13   an administrative claim with the EBC in June 2010 (AR 1424).  The EBC denied plaintiff's

14   claim on the grounds that (1) the pension plan excluded contract workers; (2) plaintiff was a

15   contract worker during the 1983 to 1989 period; (3) a separate collective bargaining agreement

16   and letter agreement governed the calculation of service credit under the pension plan; (4) the

17   collective bargaining agreement required that plaintiff's claim proceed through the grievance

18   process; and (5) plaintiff had previously pursued his claim via the grievance process in an

19   untimely manner (AR 1070).

20   In September 2010, plaintiff filed an appeal with the Appeals Committee.  There is

21   evidence in the record in the form of an internal in-house counsel email suggesting that PG&E

22   decided to deny the appeal prior to conducting a complete legal analysis of plaintiff's arguments

23   (AR 1214 (emphasis added)):

24   *I took a quick read* through the Sizemore appeal.  I am willing to
     take a crack at the draft of a memo to EBC, but will need
25   assistance with the following labor/employment issues.

26   1.  Common law employees.  The appeal's only real substantive
     argument relies on the assertion that Sizemore was a common law
27   employee during the initial years of work for PG&E and therefore
     should get credited service for those years.

28

2

> Shari [NB: another in-house attorney], I am going to need you to take a really close look Section III.A of his appeal and *analyze and draft an argument as to why he should not be deemed to have been a common law employee* during those years, really taking a crack at rebutting the assertions being made and explaining how just because workers were reclassified as a result of a union grievance, that does not mean they were common law employees.
>
> *If we cannot make a strong argument regarding this issue*, we should discuss this.

Another internal in-house counsel email from September 2010 suggests that the EBC's denial of plaintiff's claim was pretextual, and that genuine reason for denial was a concern that other employees would bring similar claims (AR 1670). The email was produced in redacted form to plaintiff; as further explained below, this order compels defendants to produce the document to plaintiff in full. The redacted portion of the email stated: "I am a little troubled by the fact that [plaintiff] is being represented by the Lewis Feinberg firm . . . and that if we lose this in court, there is the possibility that they will be trying to bring claims like this on behalf of other former contract workers" (*ibid*).

The Appeals Committee subsequently upheld the EBC's denial of benefits based on the *stated* conclusion that plaintiff was a contract worker from 1983 to 1989, and that such workers were excluded from the pension plan. The Appeals Committee also added the rationale that plaintiff was not a common law employee during the same time period (AR 1434).

Because the Appeals Committee rationale that plaintiff was not a common law employee had not substantively addressed in the original EBC denial, plaintiff filed a second appeal in May 2011. In June 2011, counsel for PG&E informed plaintiff that PG&E disagreed that plaintiff was entitled to a further appeal, but agreed to review it as a "courtesy . . . and in the interests of allowing the [Appeals Committee] to consider [plaintiff's] claim in its entirety" (AR 1539–40). The following November the Appeals Committee upheld its prior decision that plaintiff was not a common law employee and thus reaffirmed its prior denial of plaintiff's claim.

Plaintiff filed this action in January 2013. Defendants now move for summary judgment on the standard of review. Plaintiff opposes and requests limited discovery.

3

**United States District Court**
For the Northern District of California

**ANALYSIS**

Summary judgment is proper when the pleadings and the evidence in the record "show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

**1.    RULING ON THE APPROPRIATE STANDARD OF REVIEW IS POSTPONED.**

Where, as here, the plan grants the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the baseline standard of review is abuse of discretion. Plaintiff, however, contends that the facts of this action militate in favor of a *de novo* standard of review. This order concludes that the current record is insufficient to determine the appropriate standard of review and that discovery is warranted.

**A.    PG&E's Common Law Employee Determination.**

The plan administrator concluded that plaintiff was not an "employee" within the meaning of the plan between 1983 and 1989 by applying the common law employee test set out in *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318 (1992). Plaintiff argues that PG&E's determination that he was not a common law employee is a question of law to which the plan administrator is owed no deference. This order disagrees.

Although the determination of whether an employer-employee relationship exists is a mixed question of law and fact, it is "predominantly one of fact." *Spicer Accounting, Inc. v. United States*, 918 F.2d 90, 92 (1990). Here, the term "employee" is neither defined in the plan documents nor defined by reference to a statute. Our court of appeals has held that it then becomes the province of the plan administrator to define and interpret the plan term "employee," including whether to apply the federal common law definition of an employee to a claimant, or some other definition. *Hensley v. Northwest Permanente P.C. Ret. Plan & Trust*, 258 F.3d 986, 1001 (9th Cir. 2001), *overruled on other grounds in Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006) (en banc).

In response, plaintiff cites *Burrey v. PG&E*, 159 F.3d 388, 391–92 (9th Cir. 1998). In *Burrey*, a provision of the Internal Revenue Code was incorporated into the plan documents. Our court of appeals concluded that *de novo* review was appropriate where the definition of an employee thus turned on an issue of statutory interpretation.

*Burrey* is inapposite. The critical distinction between this action and *Burrey* is not one of statutory interpretation versus the interpretation of federal common law, for the two stand on the same footing. Rather, the plan documents in *Burrey* expressly limited the discretion of the plan administrator. Here, by contrast, the plan administrator *voluntarily elected* to apply the *Darden* factors (at plaintiff's request) to the facts at hand in order to guide its discretionary decision-making. In so doing, the plan administrator did not surrender the discretion granted by the plain terms of the plan documents. To hold otherwise would thwart our court of appeals' admonition that "plan administrators should be given the full benefit of the discretion afforded to them by their respective plans in interpreting plan terms, be they defined or undefined, with the reasonableness of those interpretations being evaluated against the relevant factual and legal backgrounds." *Hensley*, 258 F.3d at 1001.

Accordingly, this order holds that PG&E's determination that plaintiff was not a common law employee does not — by itself — change the baseline standard of review.

### B.    The Authority of the Appeals Committee.

The PG&E pension plan is sponsored by a subsidiary of the PG&E parent corporation. The subsidiary's board of directors usually appoints the members of the Appeals Committee, one of whom is usually the subsidiary's general counsel. During the relevant period, however, one of the members of the Appeals Committee — Mr. Hyun Park — was the parent's general counsel and delegated his decision-making authority to another PG&E executive, Mr. Sanford Hartman. Plaintiff contends that Mr. Park lacked authority the delegate, and that the Appeals Committee's decision was therefore invalid. This order concludes that this issue presents a question of fact that obviates summary judgment.

On June 21, 2006, the subsidiary's board of directors passed a set five resolutions (AR 1926–27). The first two granted the subsidiary's general counsel authority to take certain actions

regarding the procurement of legal services and the settlement of disputes.  The third resolution stated:

> BE IT FURTHER RESOLVED that, for purposes of implementing the resolutions of this Board of Directors, if the office of General Counsel of [the subsidiary] is not filled, then the General Counsel of this company's parent corporation shall be authorized to exercise the authority and powers granted by this Board to the company's General Counsel. . . .

This resolution is notable because at the time of plaintiff's appeal, the position of the subsidiary's general counsel was not filled.  Mr. Park, the parent's general counsel, was filling-in and had delegated his Appeals Committee role to Mr. Hartman.

Plaintiff argues that this resolution is susceptible to two interpretations.  Under one interpretation, the term "resolutions" referred to a general grant of authority for the general counsel of the parent to fill in for the general counsel of the subsidiary.  Thus, Mr. Park was empowered to sit on the Appeals Committee and in turn empowered to delegate his decision-making authority to Mr. Hartman.  Plaintiff urges that the resolution can also be interpreted as cabining the grant of authority to implementing the five resolutions passed on June 21, 2006, and listed in AR 1926–27.  Under this reading, Mr. Park lacked authority to sit on the Appeals Committee.  His role in filling-in for the subsidiary's general counsel was limited to the issues regarding procuring legal services and settling disputes.  Mr. Park therefore lacked authority to delegate any Appeals Committee decision-making authority to Mr. Hartman.

The June 21, 2006, resolutions are outside of the plan documents.  Thus, this is not an issue akin to contract interpretation.  Instead, this question comes down to the intent of the members of the subsidiary's board of directors — a question of fact.  This issue precludes summary judgment, and further militates in favor of limited discovery.  Defendants' motion for summary judgment on the standard of review is accordingly **DENIED**.

### C.    Defendants' Alleged Conflict of Interest.

Assuming, *arguendo*, the Appeals Committee was properly constituted, there may be another basis for applying a *de novo* standard of review.  Application of the baseline abuse of discretion standard in this action is not straightforward.  This is because the plan administrator is subject to a structural conflict of interest:

> Commonly, . . . the same entity that funds an ERISA benefits plan also evaluates claims, as is the case here.  Under these circumstances, the plan administrator faces a structural conflict of interest:  since it is also the insurer, benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains money for itself.  Application of the abuse of discretion standard therefore requires a more complex analysis.  Simply construing the terms of the underlying plan and scanning the record for . . . evidence supporting the plan administrator's decision is not enough, because a reviewing court must take into account the administrator's conflict of interest as a factor in the analysis.

*Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009) (citation omitted).

The application of the abuse of discretion standard is thus tempered by the extent of the conflict of interest.  A plan administrator's decision, however, "is entitled to deference only when the administrator exercises discretion that the plan grants as a matter of contract."  *Abatie*, 458 F.3d at 971.  Under some circumstances (usually involving egregious procedural violations) where the plan administrator "acts in utter disregard of the underlying purpose of the plan," the plan administrator is not exercising contractually-granted authority at all.  A *de novo* standard of review once again becomes appropriate.  *See ibid.*

As explained, this order requires defendants to produce unredacted versions of two documents in the administrative record.  One of the redacted portions — written by a PG&E in-house counsel evaluating plaintiff's claim — stated:  "I am a little troubled by the fact that [plaintiff] is being represented by the Lewis Feinberg firm . . . and that if we lose this in court, there is the possibility that they will be trying to bring claims like this on behalf of other former contract workers" (AR 1670).  This document raises the potential inference that defendants did not exercise their contractual authority in evaluating plaintiff's claim.  Instead, their sole concern was avoiding claims and lawsuits by similarly-situated employees, and the resulting claim denial was entirely pretextual.  Discovery into the extent to which this motivation colored the claim denial will illuminate the effect of this evidence on the standard of review.  At present, summary judgment on the standard of review would be premature.  For this reason as well defendants' motion for summary judgment is **DENIED**.

United States District Court

For the Northern District of California

7

United States District Court

For the Northern District of California

### 2. PLAINTIFF MAY TAKE LIMITED DISCOVERY.

Plaintiff requests limited discovery into PG&E's structural conflict of interest, including the process by which PG&E made its decisions, alleged failures to adequately investigate plaintiff's claim, and PG&E's potential financial exposure if it agreed with his contentions. For the reasons explained above, limited discovery will clarify whether plaintiff's interpretation of the evidence is correct and whether PG&E's decision-making was tainted by improper motives. It will also clarify the correct interpretation of the text of the June 2006 resolutions.

Defendants' arguments against discovery are unavailing. The fact that the EBC handled the claim denial and the Appeals Committee handled the appeals is not dispositive because the membership of the two committees overlaps, and because the members of both committees are all high-level officers at PG&E. Defendants' objections that the discovery will have no probative value and would be prejudicial to PG&E are unsubstantiated. Defendants' objections that plaintiff has not provided adequate specificity as to deposition and interrogatory topics are premature.

Accordingly, plaintiff's request for limited discovery is **GRANTED**. Discovery regarding the following topics will be allowed: (1) defendants' conflict of interest, (2) the claim review process, (3) the adequacy of defendants' investigation of plaintiff's claim, (4) defendants' potential financial exposure if they agreed with plaintiff's arguments, and (5) the June 21, 2006 resolutions. Plaintiff may serve fifteen narrow interrogatories without sub-parts and twenty document requests that are narrowly drawn. Plaintiff may also take six one-day individual depositions and two one-day 30(b)(6) depositions. Discovery related to bias and conflict of interest is not limited to plaintiff's specific case. The discovery may not be used to supplement the record with additional documentation supporting the merits of plaintiff's claim.

### 3. THE PARTIES' DISCOVERY DISPUTE.

The parties have filed a discovery dispute regarding two redacted documents (bates-labeled SIZEMORE 1670 and 1860) and one email withheld in its entirety dated April 29, 2011. Defendant argues that the withheld information is irrelevant and subject to the attorney-client

1   privilege.  Plaintiff contends that all three should be produced in full.  Following *in camera*

2   review, this order holds that only the two redacted documents should be produced.

3          Defendants' assertion of attorney-client privilege is subject to a significant exception.  In

4   ERISA cases, the fiduciary exception to the attorney-client privilege provides that an ERISA

5   fiduciary is "disabled from asserting the attorney-client privilege against plan beneficiaries on

6   matters of plan administration."  *United States v. Mett*, 178 F.3d 1058, 1062–63 (9th Cir. 1999).

7   This exception, however, expires when the interests of the parties become "sufficiently adverse,"

8   such as after a final administrative appeal on a benefit claim.  *Stephan v. UNUM Life Ins. Co. of*

9   *Am.*, 697 F.3d 917, 933 (9th Cir. 2012).

10         Defendants issued their denial of plaintiff's first appeal on December 20, 2010.  Under

11  normal circumstances, the fiduciary exception might have expired after that point.  Here,

12  however, plaintiff filed a second appeal in May 2011, and defendants issued a denial of that

13  appeal in November 2011.  Although defendants dismiss their review of the second appeal as a

14  "courtesy," the record shows that defendants accepted the appeal in order to fully evaluate

15  plaintiff's claim (AR 1539–40).  Defendants voluntarily stepped back into their role as

16  fiduciaries during the pendency of that second appeal.  Thus, during the same time period the

17  fiduciary exception applies.

18         The two redacted documents (SIZEMORE 1670 and 1860) are emails that fall within the

19  time frames of plaintiff's first and second appeals.  The fiduciary exception applies.  Following

20  *in camera* review, this order finds that the redacted information is related to plan administration

21  and is relevant to plaintiff's allegations.  Accordingly, defendants' objections to producing these

22  documents are **OVERRULED**.  Defendants shall produce these documents to plaintiff in

23  unredacted form by **JUNE 28 AT NOON**.

24         The email dated April 29, 2011, withheld by defendants is an email between in-house

25  counsel that dates to a period of time *between* plaintiff's first and second appeals.  At the time of

26  this email, defendants had not yet stepped back into the role of non-adverse fiduciaries.  On the

27  present record, plaintiff has not shown that the fiduciary exception or another exception to the

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    attorney-client privilege applies to this document.  Defendants' objection to producing this

2    document is **SUSTAINED**.

3                                              **CONCLUSION**

4           Defendants' motion for partial summary judgment is **DENIED**.  To the extent stated

5    above, plaintiff's request for leave to take limited discovery is **GRANTED**.  Defendants shall

6    produce SIZEMORE 1670 and 1860 to plaintiff in unredacted form by **JUNE 28 AT NOON**.

7

8           **IT IS SO ORDERED.**

9

10   Dated:   June 25, 2013.

                                             _____
11                                             WILLIAM ALSUP
                                             UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28